UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT C. RYAN,<br><br>                 Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                 Defendant. | Case No. C12-598-JCC-BAT<br><br>**REPORT AND RECOMMENDATION AFFIRMING THE COMMISSIONER** |

Scott C. Ryan seeks review of the denial of his Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") applications. Mr. Ryan contends the ALJ erred by (1) posing a hypothetical question to the vocational expert that did not accurately describe his limitations; and (2) failing to order a consultative medical examination regarding the use of his hands. Dkt. 1. The Court recommends the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

## BACKGROUND

The procedural history is not at issue and need not be discussed. At issue is the ALJ's decision finding Mr. Ryan not disabled. Utilizing the five-step disability evaluation process, the ALJ found:

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 1

**Step one:** Mr. Ryan met the insured status requirements through September 30, 2010, and last worked on April 22, 2009.

**Step two:** Mr. Ryan had the following severe impairments: status post cervical spine fusion, peripheral neuropathy, lumbar generative disk disease, depressive disorder, not otherwise specified, posttraumatic stress disorder, cognitive disorder, not otherwise specified, generalized anxiety disorder, and headaches.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[1]

**Residual Functional Capacity:** Mr. Ryan could perform less than the full range of light work as follows: He could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds. Mr. Ryan could sit, stand, and work six hours in an eight-hour workday. He could never climb ladders, ropes, or scaffolds. He could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He could frequently, but not constantly, handle, finger, and feel bilaterally. Mr. Ryan should avoid vibrating tools, machines, and vehicles, and hazardous working conditions such as unprotected heights and moving machinery. He is limited to tasks that can be learned in 6 months or less. Mr. Ryan is limited to occasional public contact.

**Step four:** Mr. Ryan could not perform his past work.

**Step five:** As there are jobs Mr. Ryan can perform, he is not disabled. Tr. 16-31.

The Appeals Council denied Mr. Ryan's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1-6.

## DISCUSSION

**A.     The hypothetical question the ALJ posed to the vocational expert**

The first issue Mr. Ryan raises regards the hypothetical question the ALJ posed to the vocational expert ("VE"). In specific, Mr. Ryan argues:

> An ALJ has the duty to determine that plaintiff's residual functional capacity. CFR § 404.1546 (c). The ALJ presumably based his hypothetical question on the examination of Sean To, M.D., TR (582-586) performed on June 20, 2009 and on the assessment (no examination) done on July 7, 2009 by M. I. Laichtman, M.D. (T 605-610) Incredibly, neither of those sources concluded that the plaintiff had *any* manipulative limitations

---

[1] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 2

> whatsoever which is very difficult to understand given the nature of plaintiff's cervical surgery and subsequent complaints and treatment. Therefore the ALJ must have come up with the 'frequent' functional limitation based on some general sense from the record because there is nothing in the decision that explains why, or how he determined that limitation were 'frequent' as opposed to 'occasional' (or none at all)."

Dkt. 10 at 3-4. This argument is problematic. The argument that Drs. To's and Laichtman's opinions are "incredible" is not a basis upon which the Court may grant relief. A court may set aside the Commissioner's final decision only if the ALJ's findings were legally erroneous or not supported by substantial evidence. *See Bayless v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005); 42 U.S.C. § 405(g). In other words, while Mr. Ryan may personally be dismayed about medical opinions certain doctors gave, his personal view about those opinions articulates no error upon which the Court may reverse the ALJ.

Mr. Ryan also argues the ALJ must have come up with the "frequent" functional limitation based on a general sense of the record because the ALJ failed to explain how he reached that finding. Contrary to this assertion, the ALJ explained the basis for his finding that Mr. Ryan had the RFC to handle "frequently."

Mr. Ryan's testimony at the hearing before the ALJ was the only evidence he had the RFC to handle occasionally, and not frequently. Mr. Ryan testified his hands tire easily, he drops things and his grip is not good. Tr. 60. The VE opined if she adopted Mr. Ryan's testimony, he would be limited to "occasional fingering." Tr. 61. The ALJ subsequently asked Mr. Ryan's attorney whether "there are medical assessments that suggest he's [Mr. Ryan] limited to occasional handling and fingering." Tr. 92. In response, counsel stated: "I don't, I don't believe so. I don't know that they're expressed in that - -, I think the evidence supports the neuropathy he has with his hand and is also his testimony." *Id.*

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 3

The ALJ agreed the evidence showed Mr. Ryan had peripheral neuropathy but disagreed that Mr. Ryan's handling limitations were as severe as he claimed.  In specific, the ALJ found:

> Additionally, the claimant testified that he was unable to work because of depression, anxiety and neuropathy in both hands. He described no feeling in his left hand in particular. Standing and walking according to the claimant was limited to about half an hour to one hour. The undersigned does not find the claimant's testimony persuasive because Dr. To's assessment did not find any restrictions with the use of the claimant's hands for fine and gross manipulations and muscle tone mass as well as range of motion were all normal. The peripheral pulses were normal as well. Although recent treatment records note some numbness and tingling in the left, non-dominant hand, objective testing has not substantiated these complaints and the claimant reported some relief with medication, discussed above. Exhibits 2F/13, 20 1F/7, 20 2F/4.

Tr. 27.  These findings show the ALJ rejected Mr. Ryan's testimony he was limited to occasional fingering on the grounds it was inconsistent with Dr. To's opinion that Mr. Ryan had no handling restrictions.  Further, as Mr. Ryan's lawyer conceded at the hearing before the ALJ, no medical source opined Mr. Ryan was limited to occasional handling.  Accordingly, the record does not support Mr. Ryan's claim that the ALJ failed to explain how he reached the finding that Mr. Ryan had the RFC to perform frequent handling.

Although not clearly articulated, Mr. Ryan's briefing raises another potential issue pertaining to the ALJ's assessment of Dr. To's opinions.  Mr. Ryan has not argued the ALJ misread Dr. To's examination report.  However, in connection with the second issue he raises—the ALJ should have ordered a consultative exam—he implies the ALJ improperly relied on Dr. To's opinions. Dkt. 10 at 4-5.  In specific, he argues "it is also clear that her [sic] sought treatment for his hands in 2010 and 2011, well after the Dr. To's 2009 evaluation.  Therefore it is not likely that Dr. To was seeing the pathology that existed after his examination." *Id.*  The argument is amplified in the Reply Brief; there Mr. Ryan contends "the examination performed

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 4

1  by Dr. To was done on June 20, 2009 which was prior to the evidence that showed the plaintiff
2  had clearly worsening symptoms and finding in 2010 and 2011." Dkt. 15 at 1.  Based on these
3  contentions, Mr. Ryan argues "Dr. To's 2009 examination would not be relevant to the plaintiff's
4  manipulative abilities in 2010 or 2011.  Dkt. 15 at 2.

5        The record does not support this argument.  The record contains no medical opinions that
6  Mr. Ryan's hand problems limited him to occasional handling.  As discussed above, Mr. Ryan's
7  lawyer, in fact, admitted as much at the hearing conducted before the ALJ.  What the record
8  shows is that most of Mr. Ryan's physical complaints relate to his back and his neck.

9        Dr. To examined Mr. Ryan on June 20, 2009.  Tr. 582.  Mr. Ryan did not indicate to the
10  doctor that he had problems with his hands.  Rather, in the medical history the doctor took, Mr.
11  Ryan reported "the pain in his neck is so severe, it radiates down to the shoulders and arms with
12  numbness and tingling sensation"; "furthermore he states the pain is in the lumbrosacral area
13  radiates down to the left leg with numbness and tingling sensation." *Id.*  Dr. To also measured
14  Mr. Ryan's grip strength using a dynamometer.  Tr. 584.  There is no indication that Mr. Ryan
15  had any complaints about his hands during the test, or at any point in the examination.

16        After being examined by Dr. To, Mr. Ryan was treated at Neighbor Care Health from
17  March 19, 2010 to February 10, 2011.  Dkt. 637-82.  Virtually all of Neighbor Care Health's
18  records indicate Mr. Ryan had only neck, head or back pain.  One record dated March 19, 2010
19  indicated he also complained of "pain in arms. Burning tingling." Tr. 637.  This record does not
20  indicate Mr. Ryan had any complaints regarding his hands.  Other than this report, the medical
21  record indicates he was treated at Neighbor Heath Care only for neck and back problems, and
22  that he did not receive treatment for hand problems.  *See* Tr. 650, 656, 667, 673, 675, 678, 680
23  and 682.

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 5

In 2010 and 2011, Mr. Ryan was also seen at Swedish Medical Center three times. Tr. 683-91. On August 19, 2010, Mr. Ryan reported upper extremity pain described as burning, stabbing, pins and needles, and numbness to the posterior aspect of the arms and 5th and lateral aspect of the 4th digits bilaterally. Tr. 691. On November 17, 2010, he was admitted for "neck pain" for which he received an epidural injection. Tr. 688-89. There is no indication of hand problems. And on February 16, 2011, Mr. Ryan reported "shock like, numb and tingling, especially in the left hand." Tr. 686. The Swedish records do not describe what effect, if any, these symptoms had on Mr. Ryan's ability to handle items or perform work or other activities.

The record thus shows Mr. Ryan reported, once, in March 2010 problems with his arms, and then twice reported problems with his hands beginning about August 19, 2010. While the record shows Mr. Ryan complained of hand problems after being examined by Dr. To, the medical record is too scant to conclude these problems limited Mr. Ryan to occasional handling and that the ALJ thus erred in relying on Dr. To's opinions. The ALJ is charged with evaluating the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Here, the ALJ discounted the Swedish Medical records that indicated "some numbness and tingling in the left non-dominant hand" on the grounds "objective testing has not substantiated these complaints." Tr. 26. An ALJ need not accept a medical source's opinion that is not adequately supported by objective medical evidence, or that is brief, conclusory, and inadequately supported by medical records, as is the case here. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Mr. Ryan obviously disagrees. But the Court cannot reweigh the evidence, and thus cannot simply agree with Mr. Ryan that the 2010 and 2011 Swedish medical records show his hand problems worsened after he was seen in 2009 by Dr. To, given how scant the Swedish

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 6

medical records are, and given the reasons set forth by the ALJ for discounting those records. At best, the Swedish medical records are susceptible to more than one rational interpretation. However, in such circumstances, it is the Commissioner's conclusion that the Court is obligated to uphold. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Additionally, the Court notes that the timing of the 2010 and 2011 medical reports and of Mr. Ryan's testimony bear on whether they may used to support Mr. Ryan's disability applications. Mr. Ryan applied for DIB and SSI. To obtain DIB, Mr. Ryan must establish disability on or before the date he remained last insured, which in this case was September 30, 2010. Tr. 21. Mr. Ryan testified before the ALJ on February 23, 2011, and points to medical records from February 16, 2011 (Tr. 686) and August 19, 2010 (Tr. 691) regarding pain or numbness to his hands to support his request for remand. *See* Opening Brief Dkt. 10 at 2 and Reply Dkt. 15 at 2. As this evidence is primarily after the last date Mr. Ryan was insured, it cannot be relied upon to obtain DIB. This evidence may be considered in support of SSI. But as noted above, the evidence is too scant to conclude Mr. Ryan was limited to occasional handling and that the ALJ thus erred in relying on Dr. To's opinions.

**B.     The ALJ's duty to order a consultative evaluation**

Mr. Ryan contends the ALJ erred by failing to order a consultative examination to assess his ability to use his hands. As grounds, he argues in his opening brief the ALJ "picked the 'frequent' [handling limitation] out of the air," and therefore should have ordered an additional exam "so the hypothetical question [to the VE] is based on evidence." Dkt. 10 at 5. In his reply brief, he argues:

> The record is obviously insufficient when the ALJ has arrived at a specific functional limitation without relying on specific medical testing and evaluation. Dr. To's examination simply does not address the issue of the plaintiff's manipulative limitations. The

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 7

> ALJ was obviously convinced that the plaintiff would be limited in using his hands for manipulation, and once it came to that determination he should have developed the record further in order to determine the precise scope of the limitation by obtaining a consultative examination.

Dkt. 15 at 2-3.  These arguments do not establish the ALJ should have ordered a consultative examination.  The arguments that the ALJ's handling findings were "picked out of the air," "arrived at . . . without relying on specific medical testing," or based on an "examination [that] simply does not address the issue of plaintiff's manipulative limitations," are arguments that the ALJ's handling findings are not supported by substantial evidence.  But as discussed above, the ALJ properly considered the medical evidence and the Court is not in a position to reweigh the evidence or substitute its assessment for the ALJ's assessment.

The argument the medical evidence about Mr. Ryan's hand limitations was scant and therefore compelled the ALJ to order more testing is contrary to law.  It was Mr. Ryan's duty to prove that he was disabled.  A claimant cannot be considered disabled unless the claimant furnishes medical or other competent evidence establishing disability.  *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a) and (c).  An ALJ's duty to supplement the record and order another examination is triggered only if there is ambiguous evidence, or if the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  For example in *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001), the ALJ relied heavily on the opinion of a medical expert who testified the record was "confusing," recommended that a more detailed report should be obtained, and that he might have a different opinion if the claimant's symptoms were clarified.  *Id*. at 1150.  The Court of Appeals found these circumstances compelled the ALJ to further develop the record, and held an ALJ commits

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 8

reversible error in relying on a witness who equivocates, expresses concern over the completeness of the record, and recommends an additional report be obtained.

In contrast, the evidence about Mr. Ryan's handling limitations was not ambiguous or based on experts who express concern about the completeness of the record.  Rather, the evidence about Mr. Ryan's handling limitations was skimpy and thus insufficient to establish he was limited to "occasional" handling as he claimed.  Mr. Ryan was represented by counsel when he appeared before the ALJ.  He had the burden to present evidence that he was disabled and the assistance of a lawyer to fulfill that burden.  Mr. Ryan was asked whether there was medical evidence showing he was limited to occasional handling.  He indicated there was none and did not request that the ALJ further develop the record.  Under these circumstances, the ALJ had no duty to further develop the evidence for Mr. Ryan and therefore did not err in failing to order additional testing or examinations.

It may be that since August 19, 2010, Mr. Ryan's hand problems have become more severe, and that he is now limited to "occasional" handling.  But the record before the Court does not establish this and the Court therefore must affirm the ALJ.  Of course, if there is medical evidence Mr. Ryan has become more impaired since August 2010, Mr. Ryan has the option of filing a new application for SSI.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.  A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **December 20, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **December 21, 2012**.  If

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 9

objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 6th day of December, 2012.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION
AFFIRMING THE COMMISSIONER - 10